Donald W. Reid – SBN 281743
LAW OFFICE OF DONALD W. REID
PO Box 2227
Fallbrook, CA 92088
(951) 777-2460
don@donreidlaw.com

Counsel for Defendant

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>MICHAEL PAUL NEWMAN,<br><br>Debtor | Case No. 6:21-bk-11329-SC<br><br>Chapter 7<br><br>Adv. No. 6:21-ap-01071-SC |
| CHLOE LEE, Trustee of the Sang Hoon Lee Living Trust,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PAUL NEWMAN,<br><br>Defendant. | **DEFENDANT'S CLOSING ARGUMENT**<br><br><u>Trial:</u><br>Date:          October 30, 2023<br>Time:          9:30 a.m.<br>Courtroom:   5C |

i

# TABLE OF CONTENTS

Page

I.    STATEMENT OF FACTS ...................................................................................1

II.   PROCEDURAL HISTORY..................................................................................1

    A.    The SC Action...................................................................................1

    B.    The BK Case and AP .........................................................................2

    C.    The BAP Appeal and Remand...........................................................4

III.  CLAIMS FOR RELIEF .......................................................................................6

    A.    First Claim – Defalcation While Acting in Fiduciary Capacity
        [11 U.S.C. § 523(a)(4)] ....................................................................7

        1.    NEWMAN Did Not Commit an Intentional Wrong by Acting with
            Bad Faith, Moral Turpitude, or Other Immoral Conduct................8

        2.    NEWMAN Did Not Act with Criminal Recklessness by
            Consciously Disregarding a Substantial Risk to LEE
            Based on the Circumstances Known to Him ................................11

    B.    Second and Third Claims – Embezzlement and Larceny
        [11 U.S.C. § 523(a)(4)] ...................................................................13

    C.    Fourth Claim – Willful and Malicious Injury [11 U.S.C. § 523(a)(6)] .....14

IV.   CONCLUSION...................................................................................................15

**TO THE HONORABLE SCOTT CLARKSON, U.S. BANKRUPTCY JUDGE,**

**PLAINTIFF AND COUNSEL OF RECORD:**

Defendant Michael Paul Newman ("NEWMAN") submits this Closing Argument in the above-captioned adversary proceeding.

## I.        STATEMENT OF FACTS

NEWMAN has previously briefed at length the underlying facts, including the facts stipulated in the parties' *Joint Pre-Trial Stipulation* [Doc. 78] ("JPTS") and the testimony of unavailable witnesses, specifically Sang Hoon Lee ("LEE") and Steve Kim, in his *Defendant's Trial Brief* [Doc. 87] ("Defendant's Trial Brief").

Instead of repeating this recitation here, NEWMAN incorporates by reference the Statement of Facts set forth in Defendant's Trial Brief. *See* Defendant's Trial Brief at 1-29. All capitalized terms not otherwise defined herein have the same meaning as they do in Defendant's Trial Brief.

## II.        PROCEDURAL HISTORY

### A.        The SC Action

On August 28, 2017, LEE sued NEWMAN in the Riverside Superior Court for conversion, fraud, and legal malpractice. JPTS ¶ 16. The action was styled *Lee v. Newman*, Case No. RIC 1716036 ("SC Action").

In March and April of 2019, a 5-day trial was held. The claim for legal malpractice was disposed of at trial on NEWMAN's motion for non-suit. At the conclusion of the trial, the court took the matter under submission. JPTS ¶ 17.

In July of 2019, the State Court entered a statement of decision ("SC Decision"). JPTS ¶ 18.

On the fraud claim, the State Court found that LEE did not meet his burden of proof and entered judgment in favor of NEWMAN on this cause of action. JPTS ¶ 19.

On the conversion claim, the State Court found that NEWMAN agreed to accept $20,000 for his compensation, and by taking $150,000 from the settlement funds, he had committed conversion. The State Court stated that: 1) LEE had the right to possess the $130,000; 2)

1

1  NEWMAN converted the $130,000 by a wrongful act; and 3) LEE suffered damages of $130,000.

2  JPTS ¶ 20.

3         The State Court held that LEE had exercised his right to void the retainer agreement and

4  determined that the reasonable value of NEWMAN's services was $20,000. The court awarded

5  LEE damages of $130,000. JPTS ¶ 20.

6         **B.    The BK Case and AP**

7         On March 15, 2021, NEWMAN filed the instant bankruptcy proceeding on March 15,

8  2021. JPTS ¶ 26.

9         On June 9, 2021, Plaintiff filed a nondischargeability complaint against Defendant ("AP

10  Complaint"), initiating this adversary proceeding. AP Doc. 1. The AP Complaint asserts four

11  Claims for Relief. The First, Second, and Third Claims are pled under 11 U.S.C. § 523(a)(4). The

12  Fourth Claim is pled under 11 U.S.C. § 523(a)(6).

13        All Claims are based on NEWMAN's conversion of the $130,000.

14        The First, Second, and Third Claims allege that NEWMAN committed defalcation,

15  embezzlement, and larceny, respectively, when he converted $130,000 pursuant to the state court's

16  statement of decision.

17        43. A fiduciary attorney-client relationship existed between
18        Parties at the time when NEWMAN was entrusted with the
       Settlement Funds, which he deposited into his trust account.

19        44. When NEWMAN converted the Settlement Funds for his
20        personal use, he failed to account for such funds and defalcated in
       his role as a fiduciary of LEE.

21        45. The debt owed to LEE by NEWMAN is the result of
22        NEWMAN's defalcation while acting as a fiduciary and is excepted
       from discharge pursuant to 11 U.S.C. §523(a)(4).

23  AP Complaint at ¶¶ 43-45 (First Claim).

24        47. The State Court and Appellate Court made the following
25        findings of fact:

       . . .

26        48. The Settlement Funds, which were LEE's property,
27        lawfully came into NEWMAN's possession.

28        49. When NEWMAN appropriated and converted these
       funds for his own personal use, they were used for a purpose other
       than that for which he was entrusted with them.

2

50. The State Court's findings clearly indicate that there were circumstances involving fraud and deception.

51. The debt owed to LEE by NEWMAN is the result of NEWMAN's embezzlement and is excepted from discharge pursuant to 11 U.S.C. §523(a)(4).

AP Complaint at ¶¶ 47-51 (Second Claim)

53. The Settlement Funds, which were LEE's property, wrongfully came into the hands of NEWMAN.

54. At the time when NEWMAN acquired the Settlement Funds, he had the intent to convert them for his own personal use through deception and fraud and without LEE's consent.

55. The State Court's findings clearly indicate that there were circumstances involving deceptive and fraudulent behavior.

56. The debt owed to LEE by NEWMAN is the result of NEWMAN's larceny and is excepted from discharge pursuant to 11 U.S.C. §523(a)(4).

AP Complaint at ¶¶ 53-56 (Third Claim).

The Fourth Claim alleges that NEWMAN committed a willful and malicious injury to LEE by converting the $130,000.

58. When the Settlement Funds were issued, they became LEE's rightful property.

59. NEWMAN intentionally caused harm to LEE by converting the Settlement Funds for his own personal use and knew that this act would harm LEE.

60. NEWMAN acted willfully and maliciously when he converted the Settlement Funds for his own personal use.

61. By this conversion, LEE was harmed by the deprivation of his property.

62. The debt owed to LEE by NEWMAN is the result of NEWMAN's willful and malicious injury to LEE's property and is excepted from discharge pursuant to 11 U.S.C. §523(a)(6).

AP Complaint at ¶¶ 58-62 (Fourth Claim).

On October 13, 2021, the Court entered an *Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment* [Doc. 25] ("MSJ Order"). The MSJ Order granted LEE summary judgment in favor of Plaintiff on the First and Fourth Claims, and denied LEE summary judgment on the Second and Third Claims. In the MSJ Order, the Court found, among other things, that the State Court's findings that NEWMAN committed conversion and acted

3

"intentionally and wrongfully" were preclusive as to whether NEWMAN committed defalcation under § 523(a)(4) (First Claim) and committed a willful and malicious injury to LEE under § 523(a)(6) (Fourth Claim).

### C.    The BAP Appeal and Remand

Defendant appealed the MSJ Order to the Ninth Circuit BAP.

On June 10, 2022, issued a decision reversing the MSJ Order. Specifically, the BAP held that conversion is a strict liability tort and that NEWMAN's subjective intent was not actually litigated or necessarily decided in the conversion cause of action. Accordingly, it was error for the Court to give preclusive effect to SC Decision as to NEWMAN's culpable state of mind under § 523(a)(4) or NEWMAN's mental state under § 523(a)(6).

On the First Claim, the BAP wrote in relevant part:

> A debt is nondischargeable under § 523(a)(4) if: (1) there is an express trust; (2) the debt is created by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor when the debt was created. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997), abrogated on other grounds by *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274, 133 S. Ct. 1754, 185 L. Ed. 2d 922 (2013). Whether Newman was a fiduciary for purposes of § 523(a)(4) and whether his actions constituted defalcation are governed by federal law. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (9th Cir. BAP 2013).

> The attorney-client relationship between the parties is sufficient to establish the first and third elements of the claim because the state court found that Newman converted Lee's funds from a client trust account. *See Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862 (9th Cir. 2001) (holding that an express trust and fiduciary relationship are satisfied when an attorney deposits a client's funds into his trust account).

> But defalcation requires a "culpable state of mind." *Bullock*, 569 U.S. at 269. To establish defalcation, a movant must show: (1) bad faith, moral turpitude, or other immoral conduct; or (2) an intentional wrong. *Id.* at 273-74. A fiduciary's conduct is intentional if he knows the conduct is improper or he "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk." *Id.* at 274 (cleaned up).

> The record in this case does not show that Newman's culpable mental state was actually litigated or necessary to the Conversion Judgment.

> . . .

4

. . . Although the state court determined that Newman acted "intentionally and wrongfully," we cannot say with sufficient certainty whether Newman's culpability was determined by the court. The state court's finding may refer merely to the fact that Newman intended the act of retaining the funds, which was a wrongful dominion, and may have no relevance to whether Newman knew the conduct was wrong or whether he consciously disregarded a substantial and unjustifiable risk. . . .

Moreover, even if we could conclude that Newman's culpable mental state was actually litigated, it was not necessarily decided…. Because conversion in California is a strict-liability tort, "[t]he foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." [Citation omitted]. The Conversion Judgment is just for conversion. There is no evidence that punitive damages were sought or awarded, and we see no other basis for the state court's finding that Newman acted "intentionally and wrongfully." To the extent that the finding is intended to be a determination of Newman's culpable mental state in converting Lee's property, it is entirely unnecessary to the judgment and not entitled to preclusive effect.

BAP Memorandum at 11-14.

On the Fourth Claim, the BAP wrote in relevant part:

Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." A creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). This requires an inquiry into the debtor's subjective state of mind. *See id.* at 1145-46. It is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (cleaned up).

A judgment for conversion under California law decides only that a defendant has engaged in wrongful dominion over a plaintiff's property; it does not decide that a defendant caused

5

"willful and malicious" injury. *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1039 (9th Cir. 2001). Accordingly, "[a] judgment for conversion under California law . . . does not, without more, establish that a debt arising out of that judgment is nondischargeable under § 523(a)(6)." *Id.*

To prevail on a § 523(a)(6) claim arising from a California conversion judgment, a creditor must "first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 295 (Bankr. C.D. Cal. 2006); *see also Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 429 (9th Cir. BAP 2002) ("Even though a conversion occurred, [creditor] still had to prove that Debtor converted the proceeds with 'wrongful intent.'").

As discussed above, the record provided by Lee does not evidence that Newman's mental state was actually litigated or necessarily decided by the Conversion Judgment. And although the bankruptcy court may rely on circumstantial evidence to find willfulness, *In re Su*, 290 F.3d at 1146 n.6, and malice may be inferred from the nature of the wrongful act if it is willful, *In re Thiara*, 285 B.R. at 434, Lee relied exclusively on issue preclusion grounds and did not provide any other evidence in support of the motion. Issue preclusion is not available here to establish the requisite mental state necessary to find willfulness and malice, and the bankruptcy court erred by granting summary judgment on Lee's § 523(a)(6) claim.

BAP Memorandum at 14-16.

On remand, the parties proceeded to trial.

On April 13, 2023, the parties filed a *Joint Pre-Trial Stipulation* [Doc. 78] ("JPTS"). Among the factual issues to be litigated is NEWMAN's subjective intent. The JPTS does not identify any issues of law to be litigated.

Trial was held on October 30, 2023. At the conclusion, the Court allowed for the filing of post-trial briefs by December 20, 2023.

## III.    CLAIMS FOR RELIEF

Generally, exceptions to discharge are construed strictly against a creditor and liberally in favor of a debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000). The statutory exceptions to discharge should be "narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001); *see also Lamar, Archer & Cofrin, LLP v.*

*Appling*, __ U.S. __, 138 S. Ct. 1752 (2018). A creditor seeking to except a debt from discharge bears the burden of proving each element of its cause of action by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

### A.    First Claim – Defalcation While Acting in a Fiduciary Capacity
### [11 U.S.C. § 523(a)(4)]

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The AP Complaint asserts three claims under § 523(a)(4). The First Claim asserts a defalcation theory. The Second Claim asserts an embezzlement theory. And the Third Claim asserts a larceny theory.

A creditor seeking relief under § 523(a)(4) for defalcation while acting in a fiduciary capacity must establish three elements: (1) an express trust existed; (2) the debt was caused by defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created. *Moussighi v. Talasazan (In re Talasazan)*, 2018 Bankr. LEXIS 1896, *20-21 (Bankr. C.D. Cal., June 22, 2018) (citing *Nahman v. Jacks*, 266 B.R. 728, 735 (B.A.P. 9th Cir. 2001)).

"Defalcation is the misappropriation of trust funds or money held in any fiduciary capacity, or the failure properly to account for such funds." *Id.* (citing *Jacks*, 266 B.R. at 737). Alternatively, it has been defined as "a failure to produce funds entrusted to a fiduciary." *Id.* (citing 4 Collier on Bankruptcy ¶ 523.10[1][b] (16th ed.)). Most importantly, at least for the present case, defalcation requires a "culpable state of mind ... involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).

In *Bullock*, the Supreme Court applied the familiar noscitur a sociis canon to hold that the term "defalcation" possessed a mens rea requirement akin to those of "fraud," "embezzlement," and "larceny." 569 U. S., at 269, 274-275.

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as

1
2
3
4
5
6
7
8

> equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code §2.02(2)(c), p. 226 (1985). See id., §2.02, Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., §2.02(2)(c), at 226 (emphasis added). Cf. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194, n. 12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

9    *Bullock*, 569 U.S. at 273-274.

10    *Bullock* creates two scienter levels that may constitute a nondischargeable defalcation

11   under § 523(a)(4), including (1) conduct involving "bad faith, moral turpitude, or other immoral

12   conduct," (such as self-dealing), and (2) "reckless" conduct constituting a conscious disregard of,

13   or a willful blindness to, a substantial and unjustifiable risk. *See Fogg v. Pearl (In re Pearl)*, 502

14   B.R. 429, 440 (Bankr. E.D. Penn. 2013) (citing *Bullock*, 569 U.S. at 274).

15    **1.    NEWMAN Did Not Commit an Intentional Wrong by Acting with**

16    **Bad Faith, Moral Turpitude, or Other Immoral Conduct**

17    NEWMAN did not act with bad faith, moral turpitude, or other immoral conduct when he

18   withdrew the $150,000 from his client trust account as payment of his 15% contingency fee under

19   the Second Retainer Agreement. *Bullock*, 569 U.S. at 273.

20    The Second Retainer Agreement provided NEWMAN a 15% contingency fee on all

21   amounts recovered on Lee's behalf. Ex. 12 (Second Retainer Agreement) at 0053. ARMS inserted

22   the 15% contingency fee into the Second Retainer Agreement. JPTS ¶ 11; Ex. 6 (Park Email) ("In

23   Newman's contract, put 15%.... Newman keeps and between Arms and Caravan, they will decide

24   how to credit this amount."); Tr. Transcript at 235:5-12 (Park Testimony).

25    Prior to signing the Second Retainer Agreement, it was translated to LEE by Allen Kim.

26   Allen Kim conveyed the important content of the Second Retainer Agreement, including the 15%

27   contingency fee payable to NEWMAN. Ex. 65 at 0687:5-0688:2, 0690:12-18 (Allen Kim

28

1    Testimony). LEE understood that the Second Retainer Agreement provided NEWMAN a 15%

2    contingency fee. *Id. See also* Tr. Transcript at 233:5-234:22 (Park Testimony).

3         LEE agreed to the terms of the Second Retainer Agreement. However, based on his

4    separate communications with PARK (but not NEWMAN), LEE understood that he needed to

5    sign the Second Retainer Agreement so that NEWMAN could negotiate with the insurance

6    company. Ex. 65 at 0659:10-661:19 (Lee Testimony). While LEE did not believe he had an

7    obligation to pay legal fees under the Second Retainer Agreement, he did believe that 15% of the

8    recovery would be paid to ARMS. Ex. 65 at 0585:3-22 (Lee Testimony). LEE thought that

9    NEWMAN would be compensated an unspecified amount from the 15% fee that would be paid to

10   ARMS. Ex. 65 at 0587:24-0588:1 (Lee Testimony). However, there was no writing indicating

11   ARMS agreed to pay for LEE's legal expenses. *See* Ex. 16 (ARMS Reimbursement Agreement).

12        PARK was LEE's sole source of information about "everything regarding the case." Ex. 65

13   at 0584:8-13 (Lee Testimony). LEE did not have a meeting in which PARK and NEWMAN were

14   both present. Ex. 65 at 0577:20-23 (Lee Testimony). LEE spoke to NEWMAN without a

15   translator twice, but those meetings did not concern the terms of NEWMAN's retention or

16   compensation. Ex. 65 at 0577:28-0578:6 (Lee Testimony).

17        LEE signed the Second Retainer Agreement and initialed every page. Ex. 12 (Second

18   Retainer Agreement).

19        After the Second Retainer Agreement was signed, NEWMAN negotiated a policy limit

20   settlement ($1,000,000) on behalf of LEE. In late March 2016, NEWMAN received the

21   $1,000,000 settlement check from Belena Transportation and deposited the funds into his client

22   trust account. On March 28, 2016, NEWMAN sent a letter to LEE which stated, among other

23   things, that 15% of the settlement proceeds ($150,000) would be paid to the Law Office of

24   Michael P. Newman and $130,000 would be paid to ARMS. JPTS ¶ 13.Ex. 17 (March 28, 2016

25   Letter) at 0065.

26

27

28

1    Thereafter, a meeting occurred between NEWMAN and LEE and was interpreted by Steve

2    Kim (ARMS's Operations Manager).[1] During this meeting, NEWMAN explained to LEE that (1)

3    NEWMAN had negotiated down LEE's substantial medical bills, and (2) NEWMAN would pay

4    himself the 15% contingency fee ($150,000). This meeting was separately testified to by Steve

5    Kim and LEE in the SC Action.

6    Steve Kim testified that NEWMAN specifically discussed the amount of NEWMAN's

7    legal fees and that LEE did not object to them but that LEE did object to paying an additional

8    $130,000 to ARMS. Ex. 66 at 0720:1-0723:10 (Steve Kim Testimony).

9    LEE testified that he instructed NEWMAN to not pay ARMS $130,000 from the

10    settlement proceeds because LEE only owed ARMS about $60,000. Ex. 65 at 0610:3-0611:17

11    (Lee Testimony). LEE further testified that (1) his agreement to reimburse ARMS $130,000 was

12    between LEE and PARK (not NEWMAN), (2) NEWMAN was unfamiliar with this agreement,

13    and (3) LEE "took it for granted" that PARK had informed NEWMAN that $130,000 payable to

14    ARMS would come from NEWMAN's contingency fee ($150,000) instead. Ex. 65 at 0612:5-

15    0613:18, 0618:14-0619:24 (Lee Testimony).

16    On or about April 7, 2016, NEWMAN delivered a check for $100,000.00 to LEE as an

17    interim distribution from the Settlement Funds. *See* Ex. 19 (Newman Letter) at 0069.

18    On or about April 8, 2016, a little over a week after the settlement funds cleared

19    NEWMAN's trust account, NEWMAN paid himself $150,000 from the settlement funds which

20    was deposited into his firm's general operating account. JPTS ¶ 14.

21    In sum, NEWMAN did not act with bad faith, moral turpitude, or other immoral conduct in

22    paying himself the 15% contingency fee from the settlement proceeds. He simply followed the

23    Second Retainer Agreement and LEE's instructions during the subsequent meeting.

24

25

26

27

28

---

[1] *See* Ex. 66 at 0716:24-28.

1        **2.**    **NEWMAN Did Not Act with Criminal Recklessness by Consciously**

2        **Disregarding a Substantial Risk to LEE Based on the**

3        **Circumstances Known to Him**

4        NEWMAN also did not act with criminal recklessness when he paid himself the 15%

5    contingency fee pursuant to the Second Retainer Agreement. *Bullock*, 569 U.S. at 273-274 ("We

6    include as intentional not only conduct that the fiduciary knows is improper but also reckless

7    conduct of the kind that the criminal law often treats as the equivalent.").

8        This type of "reckless" defalcation is tailored for conduct that falls between mere

9    negligence and a specific intent to injure. *Pearl*, 502 B.R. at 441. "Delineating the boundaries of

10    this thin territory between negligent conduct and intentionally wrongful conduct requires a

11    somewhat nuanced analysis, involving both qualitative and quantitative considerations." *Id.*

12        The "recklessness" required for defalcation under § 523(a)(4) is not merely a heightened

13    form of negligence, as least insofar as negligence involved a standard of care that is measured

14    objectively, *i.e.*, based on the behavioral norms of a reasonable person. Rather, the recklessness

15    required for defalcation under §523(a)(4) requires consideration of the debtor's subjective state of

16    mind. *Id.*; *see also Bullock*, 569 U.S. at 277 (remanding for further proceedings because the Court

17    of Appeal applied a standard of "objective recklessness").

18        "<u>The court must consider the debtor's actual knowledge and circumstances (*i.e.*, the</u>

19    <u>subjective) and then decide whether the related conduct constituted a gross deviation from legal</u>

20    <u>standards of conduct (*i.e.*, the objective)." *Id.* at 441.

21        As to the debtor's subjective intent, the court must consider whether the debtor

22    "consciously disregards" a substantial and unjustifiable risk based on "the circumstances known to

23    him." *Pearl*, 502 B.R. at 441; Model Penal Code § 2.02 ("A person acts recklessly . . . when he

24    consciously disregards a substantial and unjustifiable risk that the material element exists or will

25    result from his conduct. The risk must be of such a nature and degree that, considering the nature

26    and purpose of the actor's conduct and the circumstances known to him, its disregard involves a

27    gross deviation from the standard of conduct that a law-abiding person would observe in the

28    actor's situation.").

1     As to the objective standard, a debtor's conduct must substantially deviate from the

2 appropriate, objective standard of conduct. *Pearl*, 502 B.R. at 441. The Supreme Court's favorable

3 citation to two federal appeals court decisions is telling. *Bullock*, 569 U.S. at 271 (citing *In re*

4 *Baylis*, 313 F.3d 9 (1st Cir. 2002), *In re Hyman*, 502 F.3d 61 (2d Cir. 2007)). In *Baylis*, the court

5 stated that for an act to be deemed defalcation within the meaning of §523(a)(4), "it must be a

6 serious one" and the plaintiff must show that the debtor's actions "were so egregious that they

7 come close to the level that would be required to prove fraud, embezzlement, or larceny." 313

8 F.3d at 19, 20. In *Hyman*, the court followed *Baylis* and further explained: "§523(a)(4) requires a

9 showing of conscious misbehavior or extreme recklessness - a showing akin to the showing

10 required for scienter in the securities law context." 502 F.3d at 68.

11     In the securities law context, the Ninth Circuit Court of Appeal has defined recklessness as

12 "[h]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence,

13 but an <u>extreme departure</u> from the standards of ordinary care . . . which presents a danger . . . that

14 is either known to the defendant or is so obvious that the actor must have been aware of it." *Cohen*

15 *v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*, 768 F.3d 1046, 1053 (9th Cir. 2014) (emphasis

16 added); *S.E.C. v. Infinity Group Co.*, 212 F.3d 180, 192 (3d Cir. 2000) (same).

17     On balance, it likely that the subjective and objective aspects of recklessness under §

18 523(a)(4) work in tandem so that the greater the deviation from the standard of conduct, the more

19 likely the court will find that the debtor consciously disregarded his duties or willfully blinded

20 himself to those duties. *Pearl*, 502 B.R. at 441, n.17.

21     Here, NEWMAN did not act with criminal recklessness when he disbursed $150,000 to

22 himself pursuant to the Second Retainer Agreement.

23     NEWMAN knew the Second Retainer Agreement provided him a 15% contingency fee,

24 and that LEE did not object to his legal fees after the meeting following the March 28, 2016

25 Letter. NEWMAN was not party to the verbal communications between PARK and LEE. And,

26 according to LEE's own testimony, NEWMAN appeared surprised that LEE agreed to pay

27 $130,000 to ARMS, especially after LEE said he only owed them $60,000.

28

1    NEWMAN's payment of his 15% contingency fee was not "so egregious that it comes

2    close to the level that would be required to prove, fraud, embezzlement, or larceny." *Baylis*, 313

3    F.3d at 20. It was not "conscious misbehavior or extreme reckless." *Hyman*, 502 F.3d at 68. And it

4    was not "an extreme departure from the standards of ordinary care" which presents a danger that

5    was known to him or so obvious that he must have been aware of it. *NVIDIA Corp. Sec. Litig.*, 768

6    F.3d at 1053.

7    Accordingly, NEWMAN did not act with criminal recklessness conduct by consciously

8    disregarding a substantial risk to LEE based on the circumstances known to him. Therefore,

9    NEWMAN is entitled to judgment on the First Claim.

10    **B.    Second and Third Claims – Embezzlement and Larceny**

11    **(11 U.S.C. § 523(a)(4))**

12    A creditor seeking relief under § 523(a)(4) for embezzlement must establish three

13    elements: "(1) property rightfully in the possession of a nonowner; (2) a nonowner's appropriation

14    of the property to a use other than which [it] was entrusted; and (3) circumstances indicating

15    fraud." *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th

16    Cir. 1991).

17    Embezzlement differs from larceny only in the fact that the original taking of the property

18    was lawful, or with the consent of the owner, while in larceny the felonious intent must have

19    existed at the time of the taking. 4 Collier on Bankruptcy ¶ 523.10[2].

20    Both embezzlement and larceny require felonious intent. *Bullock* , 569 U.S. at 274 (citing

21    *Moore v. United States*, 160 U.S. 268, 269-70 (1895)). "Felonious is defined as 'proceeding from

22    an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse of

23    color of right.'" *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1205 n.4 (9th Cir.

24    2010) (citing *Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008)

25    (quoting Black's Law Dictionary (8th ed. 2004))).

26    NEWMAN did not appropriate the Settlement Funds to a use other than which they were

27    entrusted. NEWMAN abided by the terms of the Second Retainer Agreement and followed LEE's

28    instructions after the meeting about the March 28, 2016 letter. From the Settlement Funds

13

1   ($1,000,000.00), NEWMAN paid LEE's medical bills ($141,191.55), NEWMAN's contingency

2   fee ($150,000.00), and the remainder to LEE ($708,808.45). NEWMAN did not pay himself

3   anything more than what LEE had previously agreed to in writing.

4        NEWMAN also did not have felonious intent for the reasons described above. He did not

5   proceed from an evil heart or purpose because he had a color of right to the 15% contingency fee.

6        Therefore, NEWMAN is entitled to judgment on the Second and Third Claims.

7        **C.    Fourth Claim – Willful and Malicious Injury (11 U.S.C. § 523(a)(6))**

8        Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries

9   to an entity or its property. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199,

10  1206 (9th Cir. 2010); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir.

11  2008). The willfulness and malice elements are legally distinct and require separate consideration.

12  *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002).  Under § 523(a)(6), a debt arises

13  from a "willful" injury when the debtor subjectively intended to cause injury to the creditor or

14  subjectively believed that injury was substantially certain to occur.  *Ormsby*, 591 F.3d at 1206; *Su*,

15  290 F.3d at 1144-46.  A debt arises from a "malicious" injury when it is based on: "(1) a wrongful

16  act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause

17  or excuse."  *Ormsby*, 591 F.3d at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202,

18  1209 (9th Cir. 2001)).

19       The "willful" injury requirement must be established before "malicious" injury may be

20  concluded. *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 434 (BAP 9th Cir. 2002) ("In

21  order to imply malice, however, it must first be established that the conversion was a 'willful'

22  injury…. Here, the bankruptcy court did not make the required finding regarding the intentional

23  and 'willful' nature of the conversion, and therefore, any inference of malice was premature.")).

24  *See also Sangha v. Schrader (In re Sangha)*, 678 Fed. Appx. 561, 562 n.3 (9th Cir. Feb. 24, 2017)

25  ("'Willful' intent must be established before 'malicious' intent may be concluded.").

26       For the reasons above, NEWMAN did not commit a willful injury because he did not

27  subjectively intend to cause injury to LEE. Likewise, NEWMAN did not commit a malicious

28  injury because he acted with just cause. NEWMAN withdrew the $150,000 from the Settlement

1    Funds pursuant to the Second Retainer Agreement and consistent with LEE's instructions during

2    the meeting following the March 28, 2016 Letter.

3         Therefore, NEWMAN is entitled to judgment on the Fourth Claim.

4    **IV.    CONCLUSION**

5         Accordingly, NEWMAN respectfully requests the Court enter judgment in his favor on all

6    Claims in the AP Complaint.

7    Dated: December 20, 2023                LAW OFFICE OF DONALD W. REID

8

9                                        By: Donald W. Reid

10                                        Counsel for Defendant, Michael Newman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  PO Box 2227, Fallbrook, CA 92088

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT'S CLOSING ARGUMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 20, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Suzanne C Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- Howard B Grobstein (TR)    hbgtrustee@gtllp.com, C135@ecfcbis.com
- Benjamin Heston    bhestonecf@gmail.com,
  benheston@recap.email,NexusBankruptcy@jubileebk.net
- Donald W Reid    don@donreidlaw.com, 5969661420@filings.docketbird.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) December 20, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 20, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- Hon. Scott Clarkson, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2023 | Donald W. Reid | /s/Donald W. Reid |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |